# THE FORD CRAIG RANCH CO.

## vs.

## THE CITY OF LOS ANGELES et al.

### SUPERIOR COURT, COUNTY OF LOS ANGELES.

( San Fernando Valley Water Case )

January 10th, 1924.

———

Suits by the Ford Craig Co. a corporation against the City of Los Angeles, a municipal corporation, and the Board of Public Service Commissioners of the City of Los Angeles for injunction. Judgment for defendants.

———

1. MUNICIPAL CORPORATIONS — MALADMINISTRA-TION — EVIDENCE — SUFFICIENCY.

In an attack directed toward the manner of public ad-ministration by those whose powers and duties are clearly and broadly designed, those alleging fraud, malfeasance, waste and discriminatory practices must establish their contentions by proof sufficient to satisfy the conscience of the chancellor and a showing of mere miscalculations, possible errors of judg-ment, failure to realize predictions based on long experience and results of eccentricities of the elements does not suffice.

2. COURTS — INTERVENTION IN PUBLIC ADMINISTRA-TION — ABUSE OF DISCRETION.

The courts will not intervene in an attack upon the manner of public administration by officers whose powers and duties are clearly and broadly designed unless the evidence clearly shows a flagrant abuse of administrative discretion.

3. COURTS—LIMITATION OF POWER — MAKING LAWS.

Judicial power is limited to declaring and applying laws and not to making them.

4. CONSTITUTIONAL LAW — COURTS NOT TO EXER-CISE LEGISLATIVE OR EXECUTIVE FUNCTIONS.

The judicial department must not assume to exercise either legislative or executive functions for the invasion by one department of the field alloted to another will not tend to make government more effective.

5. COURTS — MATTERS IN EVIDENCE HELD NOT TO WARRANT INTERVENTION IN ADMINISTRATIVE MATTERS.

In an action to enjoin a city and its Board of Public Service Commissioners from continuing an alleged waste of water supply whether the water passing through certain power plants would possess greater economic value if applied to irrigation than when utilized for power or whether water for winter irrigation can be advantageously applied to certain lands at present rates the court cannot undertake to determine in the absence of evidence clearly showing an abuse of administrative discretion warranting the court's intervention.

6. MUNICIPAL CORPORATIONS — INJUNCTION — EVIDENCE HELD INSUFFICIENT TO SHOW WASTE.

Evidence held insufficient to show any gross, flagrant or inexcusable waste of aqueduct water, or that water actually available for agricultural necessities has been diverted to any appreciable extent from its primary purpose to supply the city with water, to the manufacture of hydro electric energy, in a suit against a city to enjoin such alleged use.

7. MUNICIPAL CORPORATIONS — ADMINISTRATIVE OFFICERS — REGULARITY OF ACTION — EVIDENCE.

In an action to enjoin alleged waste by use for power of water claimed for irrigation use brought against a city and its Board of Public Service Commissioners, evidence held not to overcome the persumption of regularity which attaches to acts of administrative officers acting within the scope of their authority.

Paul Burks, Judge.

In the Superior Court of the State of California

In and for the County of Los Angeles.

Nos. 124416 and 131050 (Consolidated).

The Ford Craig Ranch Co., a corporation, Plaintiff.

vs.

The City of Los Angeles, a municipal corporation, and the Board of Public Service Commissioners of the City of Los Angeles, Defendants.

In these two suits in equity which were consolidated for the purposes of trial, the Ford Craig Ranch Company on its own behalf and on behalf of other land owners, agriculturists and water users of the San Fernando Valley, who are similarly situated, seeks (First) to enjoin the alleged maladministration by the City of Los Angeles and by its Board of Public Service Commissioners of a public trust, and to restrain an alleged waste of the water supply of the Los Angeles Aqueduct, and,

(Second) to have this Court assume the administration of that governmental function, and to reduce by one half, and to fix the rates now prescribed by ordinance for the use of water for purposes of winter irrigation.

The cases are highly important in their public aspects. They involve important principles of administrative law. They will have justified the time, expense and effort devoted to their careful consideration if they shall have served, upon the one hand, to arouse an intelligent interest in and to throw light upon the manner in which the public trust is being administered, and, upon the other hand, more forcefully to impress upon those charged with such administration the necessities of water users and the primary importance of responding to agricultural and horticultural requirements.

It would be a work of supererogation to reiterate the allegations of the complaints. In brief, and free from any unnecessary terminology and technical expressions, they seek to enjoin the diversion of aqueduct waters into the Santa Clara River or into any other water course in such manner as to preclude the use thereof by the inhabitants and tax-payers of the City of Los Angeles for domestic, industrial and agricultural purposes, and to secure radical reduction in the present rates fixed by ordinance for winter irrigation, which rates are alleged to be unfair, unjust, unreasonable and discriminatory. In other words, it

is sought by these actions to have this Court assume control of governmental functions, the administration whereof has been expressly delegated to the Board of Public Service Commissioners· The theory of both complaints is that there has been a maladministration of a public trust, a persistent disregard of the rights of agriculturists, and a wilful and inexcusable waste of public property by reason of the application solely to the generation of electric energy of water which could and should have been made available for purposes of irrigation. It is not claimed that the supply of water for domestic purposes has been jeopardized. It is only to the extent of the alleged use for the manufacture of electric energy of water required and available for agricultural necessities that the activities of the power bureau are involved.

Were the evidence sufficient to establish complainant's theory in the manner and to the extent required by well established rules of equity, then equitable intervention in the direction urged might be justified. It is well, however, to direct attention to the fundamentally sound proposition that when attack is directed towards the manner of administration of public affairs by those whose powers and duties are clearly and broadly designed, there devolves upon those alleging fraud, malfeasance, waste and discrimininatory practices the highly important duty of establishing their contentions by proof sufficient to satisfy the conscience of the chancellor. Mere miscalculations, possible errors of judgment, failure to realize predictions based on long experience and results of the eccentricities of the elements do not constitute a sufficient showing. Until and unless the evidence establishes more clearly than it has in these cases that there has been a flagrant abuse of administrative discretion, there should be no intervention by the courts. A less rigid rule would tend to break down respect for our institutions of government. The responsibilities and prerogatives of the electorate and of the judiciary are separate, distinct and well-defined. They

cannot be combined if our form of constitutional government is to be maintained. Judicial power is limited to declaring and applying laws and not to the making of them. If ours is to remain a government of laws and not of men, the judicial department must not assume to exercise either legislative or executive powers.

Whether water passing through the San Francisquito power plants would possess a greater economic value if applied to the irrigation of land than it does when utilized for the generation of power, or whether water available for winter irrigation can be advantageously applied to lands in the San Fernando Valley at the present rates charged are therefore questions which this Court cannot undertake to determine in the present proceedings and upon the showing therein made. It clearly appears from the evidence and cannot be too strongly emphasized that the Los Angeles Aqueduct, was constructed, primarily, as a municipal water enterprise, having for its object such an assured and abundant supply of water as would satisfy the domestic, industrial and agricultural interests of a rapidly expanding metropolis. The aqueduct was built out of the proceeds of bonds voted by the electors for that primary purpose. The use of water as the primary purpose of this instrumentality was further evidenced by the action of the municipality of Los Angeles in requiring all territory, including San Fernando Valley territory, desiring the use of aqueduct water to become annexed to or consolidated with the City of Los Angeles. While it was foreseen from the outset that a certain amount of hydro-electric energy could be developed from the aqueduct, it affirmatively appears from the reports of the Board of Public Service Commissioners, and from the frank and highly illuminating testimony of Chief Engineer Mulholland and from other evidence in the case, that the generation of such power was and is essentially a "by-product" secondary to the need of supplying the citizens and taxpayers of Los Angeles with an ample supply of water at rates which must, at all times. ". . . be of uni-

form operation as near as may be and . . . fair and reasonable taking into consideration, among other things, the nature of the use, the quantity supplied and the value of the service . . ." (Section 192 G. City Charter.)

Clearly therefore, taxpayers and property owners residing within the corporate limits of the City of Los Angeles are justified in demanding a steady and unswerving adherence to the policy that consideration of their necessities with respect to WATER should at all times take precedence over considerations respecting the utilization of our water supply for the generation of hydro-electric energy.   They are equally justified in contending that the generation of hydro-electric energy from the waters of the aqueduct and the reservoirs appurtenant thereto must be deemed secondary and an incidental use of such waters.   The soundness of these propositions cannot be assailed. The temper of public tolerance will not permit them to be disregarded.   The evidence fails to disclose any intention upon the part of the defendants to disregard them.   The evidence further fails to establish that there has been any gross, flagrant or inexcusable waste of aqueduct water, or that water actually available for agricultural necessities has been permitted to be diverted, to any appreciable extent, from its primary purpose, to the manufacture of hydro-electric energy.   The municipality by legislative sanction, through its various functionaries, has clearly provided in its charter a definite and comprehensive scheme for the management and control by its Board of Public Service Commissioners of rates, rules, regulations and practices pertaining to both water and power.   If the interests of citizens, taxpayers and consumers of water have not been adequately safeguarded, that is a matter for legislative rather than judicial determination.

The presumption of regularity which attaches to the acts of administrative officials acting within

the scope of their authority has not been overcome. Much confused reasoning has resulted from the forgetfulness of the very definite and limited areas within which the three definite and distinct but co-ordinate branches of government should confine their activities. The invasion by one department of the field alloted to another will not tend to make government more effective. Those charged with the administration of important governmental functions must constantly bear in mind that their authority is limited by legislation but is subject to review by the Courts. On the other hand, a showing of something more than possible errors of judgment must be required to justify our courts in assuming control of a field alloted to administrative or executive officials to the extent of regulating rates and practices when the power to prescribe which has been specifically delegated by legislation to those who are not and connot be prescient beings. To lose sight of these considerations is to invite turmoil. Our administrative law—that branch of our jurisprudence relating to the exercise by the state and its various subdivisions, within constitutional limitations, of political powers, functions and activities—recognizes that the management of public property and business transactions and the effective working of our complex machinery providing for the existence of municipal corporations, and for the general welfare of their inhabitants, may be acomplished by means of subordinates entrusted with large discretion. Respect for orderly government cannot be promoted by hampering administrative activities by unnecessary judicial restraint.

It follows therefore, that plaintiff is not entitled to the relief sought, and that the defendants in each of the above suits are entitled to judgment and to their costs, and it will be so ordered.

Dated this 10th day of January 1924.

Paul Burks,   Judge.